```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF GEORGIA
                  COLUMBUS DIVISION
```

JAMES K. SMITH, *et al.*,           *

    Plaintiffs,                  *

vs.                                 *

                                     CASE NO. 4:20-CV-80 (CDL)

MARTIN MARIETTA MATERIALS, INC., *

    Defendant.                   *

———————————————————————————

O R D E R

Plaintiffs brought claims against Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). The parties reached a settlement for sixteen of the seventeen plaintiffs, and the seventeenth plaintiff was dismissed. Defendant Martin Marietta Materials, Inc. agreed to pay a total of $34,377.14 in wages and $26,634.78 in liquidated damages, for a total of $61,011.92. The Court approved the settlement. Order (June 7, 2021), ECF No. 51. Although Defendant agreed to pay "reasonable attorneys' fees under the FLSA," the parties could not agree on a reasonable amount of attorney's fees, and they agreed that Plaintiffs should file a motion on the issue. Settlement Stipulation § I.H, ECF No. 49-2. That motion is now ripe. Plaintiffs contend that they are entitled to fees and costs in the amount of $180,967.33. Defendant argues that it should pay no more than $67,071.78. For the reasons set forth

below, Plaintiffs' motion for attorney's fees (ECF No. 52) is granted to the extent that Plaintiffs are awarded attorney's fees in the amount of $174,751.08 and costs in the amount of $2,000.75.

## FACTUAL BACKGROUND

Four Plaintiffs filed this FLSA action against Defendant to recover unpaid wages and overtime.  Plaintiffs alleged that Defendant had a pattern and practice of violating the FLSA by altering the hourly workers' time records, requiring off-the-clock work, and failing to pay for all the overtime hours worked.  In its answer, Defendant denied violating the FLSA and asserted twenty-nine affirmative defenses.  Plaintiffs asked Defendant to consent to conditional certification of a collective action; despite initially consenting to conditional certification, Defendant declined to consent, so Plaintiffs filed a motion for conditional certification.  Schondelmayer Aff. ¶ 25, ECF No. 52-3.  After Plaintiffs filed the motion, Defendant consented to conditional certification, the Court entered an order conditionally certifying the collective action, and thirteen additional employees opted in.

The parties pursued discovery, but the lawyers on both sides were unable to work out several discovery disputes and Plaintiffs filed two motions to compel, which the Court granted in part, ordering Defendant to supplement its discovery

2

responses.  Order (Feb. 4, 2021), ECF No. 41.  After the Court's order on the motions to compel, the parties got back on track and agreed to a mediation that resulted in the settlement.[1] Plaintiffs disclosed their damages computation, seeking $54,117 for unpaid wages (including $26,759.71 for "on-clock" time, $15,484.70 for "off-clock" time, and $11,872.69 for estimated "off-clock" time), $54,117 for liquidated damages, and $155,000 for attorney's fees.  Plaintiffs' claims settled during the mediation.  Defendant agreed to pay "all on-clock damages time and equivalent liquidated damages as asserted by Plaintiffs for three (3) years for all Plaintiffs except Rocky Lane," $26,634.78, plus liquidated damages in the same amount. Settlement Stipulation § I.G & Ex. A.  Defendant also agreed to pay "half of the amount of time asserted for off-clock time . . . for two years, with no corresponding liquidated damages," $7,742.36.  *Id.*  The grand total recovered by Plaintiffs was $61,011.92.  The parties could not, however, agree on a reasonable amount of attorney's fees.

DISCUSSION

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

---

[1] Opt-in Plaintiff Rocky Lane did not participate in the mediation.  He voluntarily dismissed his claims and did not recover any damages.

3

of the action." 29 U.S.C. § 216(b). And, Defendant agreed in the settlement stipulation to pay a reasonable attorney's fee. The present question is what fee is reasonable. "A reasonable fee is one sufficient to attract competent counsel to represent the case, but not one that provides a windfall for attorneys." *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019). "The first step in calculating a reasonable attorney's fee award is to determine the 'lodestar'—the product of multiplying reasonable hours expended times a reasonable hourly rate." *Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 802 (11th Cir. 2020) (per curiam) (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). There is "a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Here, Defendant argues that Plaintiffs' legal team seeks unreasonable rates and billed too many hours. The Court addresses each issue in turn.

**I.  Reasonable Hourly Rate**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."

4

*Norman*, 836 F.2d at 1299. Plaintiffs bear "the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* Here, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is" Columbus, Georgia because that is where the case was filed. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

Defendant does not challenge the following hourly rates: $275 for Julie Johnson, an attorney with eight years of experience; $215 for Jack Schley, a first-year associate; and $75 per hour for Lucas Wolff, a paralegal. Defendant does challenge Plaintiffs' $400 claimed hourly rate for their two senior attorneys. Plaintiffs' lead counsel, Carter Schondelmayer, is an experienced lawyer with twenty-three years of experience practicing law in Columbus, Georgia. She asserts that when she agreed to represent Plaintiffs in this matter, her hourly rate for plaintiffs' cases was $400 per hour, although her rates ranged from "$300 for governmental clients to $450 per hour." Schondelmayer Aff. ¶ 9, ECF No. 52-3; *see also* Snipes Aff. ¶ 7, ECF No. 52-5 (stating that Mr. Snipes's hourly rate ranges from $350 to $425 per hour). Plaintiffs also point out that the Court recently approved an hourly rate of $425 per hour for lead counsel in a complicated employment discrimination case where no one disputed that $425 was a reasonable hourly rate for

5

counsel who had been practicing law for more than thirty-five years. *Trawick v. Carmike Cinemas, Inc.*, 430 F. Supp. 3d 1354, 1362 (M.D. Ga. 2019). In that case, the plaintiff presented evidence that an experienced Columbus lawyer with more than forty years of experience charged $400 per hour in employment discrimination cases. Mot. for Att'y Fees Ex. J, Newsom Aff. ¶ 9, ECF No. 203-11 in 4:16-cv-380. There is no assertion that Plaintiffs in this case actually paid counsel $400 per hour; rather, they agreed that counsel's firm would receive all designated attorneys' fees, costs, and expenses of litigation awarded in this matter. Schondelmayer Aff. ¶ 9.

Defendant contends that a reasonable hourly rate for Plaintiffs' lead counsel is $300 per hour. In support of this argument, Defendant points out that its lead counsel only billed $285 per hour in this case and that Adian Miller, a lawyer who submitted an affidavit in support of Plaintiffs' counsel's hourly rates, is an Atlanta lawyer with limited experience practicing in the Columbus area. Defendant also relies on a ten-year-old case from this Court approving a $300 hourly rate in a Columbus FLSA case. *Lyles v. Burt's Butcher Shoppe & Eatery Inc.*, No. 4:10-CV-53 (CDL), 2011 WL 4915484, at *4 (M.D. Ga. Oct. 17, 2011). Defendant further points to a 2021 Valdosta division case where the judge concluded that $334.83 is a reasonable hourly rate for a Valdosta FLSA case. *Rumph v. Jones*

6

*Septic Tank, Inc.*, No. 7:19-CV-85 (HL), 2021 WL 1044423, at *4 (M.D. Ga. Feb. 2, 2021). Defendant did not point to evidence that the prevailing market rate in Columbus is the same as the prevailing market rate in Valdosta.

The evidence before the Court is that experienced attorneys charge $400 per hour for work on complex employment discrimination cases in Columbus, Georgia; Plaintiffs' lead counsel charges between $300 and $450 per hour, depending on the case; $300 was a reasonable hourly rate for an experienced Columbus lawyer in an FLSA case ten years ago; and Defendant's lawyer charged $285 per hour for his work on this FLSA matter. Considering this evidence, along with the Court's experience and judgment, a reasonable hourly rate for an experienced Columbus, Georgia attorney in an FLSA case such as this one is $400 per hour. Plaintiffs shall recover at this rate for time billed by Ms. Schondelmayer and Mr. Snipes.

## II. Hours Reasonably Expended

Defendant also argues that Plaintiffs' lawyers billed too many hours on this case. "Time spent is reasonable, and thus compensable, if it would be proper to charge the time to a client." *In re Home Depot Inc.*, 931 F.3d at 1087. "As with a client, counsel should not include in the lodestar hours that are 'excessive, redundant or otherwise unnecessary.'" *Id.* (quoting *Norman*, 836 F.2d at 1301). The courts must also deduct

time spent on discrete, unsuccessful claims. These are claims "that are based on different facts and legal theories" that can be treated "as if they had been raised in separate lawsuits." *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Barnes*, 168 F.3d at 428.

Plaintiffs assert that their lawyers spent 628.7 hours on this action, including their reply brief. They deleted from their lodestar calculation 18.3 hours of Ms. Schondelmayer's time that might be construed as excessive, and they suggested a 5% reduction to reflect the dismissal of one Plaintiff. Defendant did not object to any specific time entries, and it did not attempt to argue how the hours submitted by Plaintiffs in connection with each task would "indicate a lack of proper billing judgment." *Barnes*, 168 F.3d at 428 (noting that objections to the number of hours in a fee application must be specific and reasonably precise). Rather, Defendant simply asks the Court to reduce the lodestar by 50%. Defendant's chief argument is that Plaintiffs stymied progress of the case by failing to disclose a computation of their damages in their interrogatory responses. Defendant believes that this action would have settled quickly if Plaintiffs had disclosed their

8

damages computation sooner. If that had happened, Defendant posits, Plaintiffs' legal team would not have billed so much time on discovery issues.

Defendant represents that at the outset of this litigation it sent letters to Plaintiffs seeking information about Plaintiffs' damages, and Plaintiffs responded that the exact amounts of unpaid time should be in Defendant's time-keeping software. Defendant further represents that it produced the relevant time records for the four named Plaintiffs by mid-August 2020 and that it produced time records for the opt-in Plaintiffs soon after they filed their consent forms in September 2020. It was that same timeframe—early September 2020—when Plaintiffs filed their first motion to compel.[2] Defendant contends that it repeatedly sought information from Plaintiffs regarding their damages computation (though it never filed a motion to compel the information) and that Plaintiffs failed to provide the information until March 26, 2021—about a month after Defendant's Court-ordered deadline for supplementing its discovery responses.

Whether it was reasonable for Plaintiffs to refuse to disclose a damages computation or engage in settlement negotiations before they had received certain discovery

---

[2] Defendant represents that the discovery the Court compelled it to produce was not necessary for Plaintiffs' damages computation. Even if that is true, it is unclear how Plaintiffs could have known that before they received the discovery responses in early 2021.

9

responses from Defendant, the Court cannot conclude that it was unreasonable for Plaintiffs to pursue discovery regarding Defendant's timekeeping practices, Defendant's willfulness, and Defendant's affirmative defenses.  The Court also cannot divine whether Plaintiffs and Defendant would have been able to reach a successful settlement without Plaintiffs' discovery efforts.  Again, Defendant did not object to any specific time entries.  Defendant also did not point to any time entries that were solely for discrete, unsuccessful claims.  The Court thus declines to deduct any hours from the lodestar calculation.

### III. Calculation of the Lodestar

Based on the foregoing considerations, the lodestar amounts to $174,751.08, as reflected in the table below.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| CPS | 399.8[3] | $400 | $159,920.00 |
| AGS | 3.9 | $400 | $1,560.00 |
| JDJ | 9.7 | $275 | $2,667.50 |
| JPS | 35.9 | $215 | $7,718.50 |
| LHW | 161.1 | $75 | $12,082.50 |
| Subtotal | 610.4 | | $183,948.50 |
| 5% Reduction | | | ($9,197.42) |
| **Total** | | | **$174,751.08** |

---

[3] This number includes the 11.6 hours Ms. Schondelmayer spent on the reply brief and accompanying materials and excludes the 18.3 hours Ms. Schondelmayer cut from Plaintiffs' fee request.

10

**IV. Defendant's Request for a Reduction to the Lodestar**

Defendant suggests that Plaintiffs had limited success and asks the Court to reduce the lodestar for that reason. After the Court calculates the lodestar, the Court may adjust the fee upward or downward based on the results obtained. *Norman*, 836 F.2d at 1302. The Court is mindful, though, that there is a "strong presumption" that the lodestar figure represents a reasonable fee. *In re Home Depot Inc.*, 931 F.3d at 1082. But if a plaintiff is only partially successful, then a downward adjustment to the lodestar may be merited.[4] Here, Defendant argues that Plaintiffs were only partially successful because although they prevailed on both of their claims for relief, they did not receive 100% of the damages sought on one of their claims.

In support of its argument for a reduction to the lodestar, Defendant relies chiefly on *Martinez v. Hernando County Sheriff's Office*, 579 F. App'x 710, 713 (11th Cir. 2014) (per curiam). In that case, a panel of the Eleventh Circuit found that the district court did not abuse its discretion in reducing the lodestar by 75%. The plaintiff in that case sought

---

[4] The factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989), may "be used to determine whether an upward (or downward) adjustment, i.e., a multiplier, [is] warranted," but such adjustments are made only where the lodestar does not "reflect the true market value of the attorney's performance." *In re Home Depot Inc.*, 931 F.3d at 1090.

11

$61,030.13 on two distinct FLSA claims—one for an extra forty-five minutes of work per day, the other for additional after-hours time. Following a bench trial, the trial judge concluded that the plaintiff was entitled to compensation for ten extra minutes of work per day—a total of $1,075.44. *Id.* at 712. The trial judge found in favor of the defendant on the plaintiff's other claim. Given the plaintiff's loss on one claim and the limited recovery on the other, the district court cut the lodestar by 75%.

Unlike in *Martinez*, Plaintiffs here asserted two FLSA claims and prevailed on both. Plaintiffs obtained excellent results on their "on-clock" claims, receiving 100% of the amount they sought in their damages computation for such claims. Plus, Defendant stopped altering clocked-in time. Twelve of the Plaintiffs also prevailed on "off-clock" time claims, though they decided to settle for half of the amount they sought in their damages computation because of the difficulty of proving those damages.[5] Defendant only maintained the necessary documents for these claims for one year and to prove their claims, Plaintiffs would have had to sit for a deposition and testify at trial. Thus, Plaintiffs decided to settle for less

---

[5] The five Plaintiffs who did not receive an award for "off-clock" time did not seek such an award in their damages computation. Even if these Plaintiffs did initially pursue such claims, there is no suggestion that counsel's work on the claims for the successful twelve Plaintiffs was unrelated to counsel's work on the claims for these five Plaintiffs.

12

than they originally sought instead of spending additional time and money on more discovery and a trial. This is still a good result.

For the above reasons, the Court finds that Plaintiffs achieved a level of success that makes the hours reasonably expended on their claims a satisfactory basis for making a fee award. The Court does not find that an across-the-board reduction of the lodestar is warranted, and it denies Defendant's request for a downward adjustment to the lodestar.

## V. Plaintiffs' Bill of Costs

In addition to their fee request, Plaintiffs seek $6,216.25 in costs. Defendant does not object to the $400 filing fee or the $125 service fee. Defendant does object to the $5,691.25 for printing and copying costs. Copies attributable to discovery are recoverable under 28 U.S.C. § 1920(4). *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Section 1920(4) permits recovery of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Costs that are solely for the convenience of counsel are not recoverable, though. In evaluating copying costs, the Court "should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *W&O, Inc.*, 213 F.3d at 623.

Plaintiffs printed 22,765 pages of Defendant's document production at a cost of twenty-five cents per page. Plaintiffs' counsel asserts that it was necessary to print all 22,765 pages. Counsel argues that they needed to print inspection reports and audit trails so the two could be compared to determine off-clock damages.[6] Based on the Court's review, counsel printed 5,903 pages of inspection reports and audit trails.[7] The Court finds that these copies were necessary. Plaintiffs did not explain why any other specific printing costs were necessary. Counsel did note that although Plaintiffs were not deposed, Plaintiffs had been noticed for deposition and that some documents had to be printed in preparation for those depositions. Counsel did not say which documents other than the inspection reports and audit trails were necessary for deposition preparation. For these reasons, the Court finds that Plaintiffs only established that they are entitled to the costs of printing 5,903 pages: $1,475.75.

---

[6] Defendant points out that Plaintiffs' paralegal created a computer program to streamline the review and analysis of Defendant's document production. Plaintiffs' counsel maintains that the printouts of inspection reports and audit trails were necessary to accomplish this task.

[7] These are the printing costs that are clearly marked on Plaintiffs' chart as being for inspection reports and audit trails. Other audit trails and inspection reports were bundled together with other documents in the chart, and it is impossible to tell from the chart how many pages were audit trails and inspection reports.

CONCLUSION

As discussed above, Plaintiffs' motion for attorney's fees (ECF No. 52) is granted to the extent that the Court awards Plaintiffs attorney's fees in the amount of $174,751.08. Plaintiffs are awarded taxable costs in the amount of $2,000.75. The parties are directed to submit a stipulated judgment in accordance with their settlement agreement.

IT IS SO ORDERED, this 3rd day of November, 2021.

S/Clay D. Land  
CLAY D. LAND  
U.S. DISTRICT COURT JUDGE  
MIDDLE DISTRICT OF GEORGIA